## In re MacPherson's Will.

### (Surrogate's Court, New York County. January 2, 1889.)

WILLS—VALIDITY—COMPETENCY OF TESTATRIX.

Before executing her will testatrix showed insanity, displayed especially by causeless outbursts of passion, but these occasions were alternated by continued periods of sanity. Her oral and subsequent written directions for the drafting of the will were rationally given, and the will was reasonable, and accorded with her previously expressed intentions. The subscribing witnesses, one of them a law clerk, testified to her mental capacity when the will was executed. *Held*, that the will should be admitted to probate, the sanity of testatrix, at its execution, being sufficiently established.

The will of Sara J. MacPherson, deceased, was offered for probate by John MacPherson, father of the executrix therein named, who was an infant. Elizabeth Hammond contested it on the ground of want of testamentary capacity. The letter referred to in the opinion is as follows:

"Lawyer Angell: Dear Sir: in the desk held by me and my mother with the deeds of the estate Mrs. Is. MacPherson (the family leave all conclusions to me at the death of my father) (in honor of my father and mother I have drawn from my personal bank account to the amount of at least one thousand dollars $1000, more or less, not much less I can assure you,) there is the deed of the Woodland Est. Mrs. I. MacPherson missing. When you go over to 869 East 169 St. this evening please to see mother and ask her who holds those papers. Please get mother to give them into your charge and as I have the rest of the deeds and papers, why not these, ask her if she is willing to let me have them as heretofore.

"Also please ask Mrs. Hammond to show you my rooms as I am a sub-tenant paying ten dollars rent always in advance, none owing now by me. Then, if my room has no key (and I have had no latch key either and I want one new and no interference from you, Mrs. H. G. Hammond or any men of the family. Please hand her the necessary warrant to keep her hands off Miss S. J. MacPherson under a fine —— Please also have a policeman stationed, day and night, before 869 East 169 St. until both parties are out then I will pay to you Lawyer Angell whatever is my rightful share if *all then all.* If no charge to Mr. H. G. Hammond when he next arrives on shore —— By all means please execute Mrs. H. G. Hammond for laying her hands on me at four different times. Yours truly Miss Sara J. MacPherson April 22—87."

*Blair & Rudd,* for proponent.    *James R. Angell,* for contestant.

RANSOM, S.    A perusal of the testimony taken in this case must lead any mind to the conclusion that the testatrix, for a considerable period before her death, was an excitable, sickly woman, who, on slight provocation, and often

with no apparent cause, flew into fits of passion, and displayed many symptoms of a diseased mind. Conversation upon topics connected with certain of her relatives invariably excited her to some outburst. No person in the enjoyment of her senses would have composed the letter which appears to have been left at the house of Judge Angell by the deceased. Nevertheless, the unanimous testimony of the witnesses (with, possibly, the single exception of Mrs. Angell) is to the effect that, while these manifestations of an unhealthy mind were chronic from the date of her first illness, she was sometimes, for continued periods of time, in the possession of her faculties. In the light of these facts, the law as laid down in the case of *Gombault* v. *Public Administrator*, 4 Bradf. Sur. 226, might be taken as the text upon which to write a decision of this cause, viz.: "A will made in a lucid interval may be valid, but the facts establishing intelligent action must be shown. The nature and character of the instrument, and of its dispositions, have great influence, * * * and it is important to ascertain whether the contents of the will harmonize with the state of the decedent's affections and intentions otherwise expressed." In the case at bar the subscribing witnesses prove the due execution of the will, and that at the time the testatrix had mental capacity to make a will. One of the subscribing witnesses was a law clerk, and presumably familiar with the legal requisites. The will was drawn by Mr. Rudd, after an interview with testatrix, who called at his office for the purpose of giving instructions therefor. Thereafter he received a note from testatrix, containing substantially similar directions, and the will was drawn accordingly, and sent to her by a messenger, who superintended its execution at the house of decedent. At this interview with Mr. Rudd he testifies that she conversed rationally upon the subjects introduced. That the will is in accord with her expressed intentions appears by the testimony of her brother, as well as by the evidence of Mr. Rudd. In the case of *Chamber's* v. *Queen's Proctor*, 7 Eng. Ecc. R. 164, cited in *Gombault* v. *Public Administrator*, *supra*, the decedent died by his own hand the day after he executed the will. There had been indications of insanity immediately before and after its execution. The court said: "If done during a lucid interval, the act will be valid, notwithstanding previous and subsequent insanity,"—and the will was upheld mainly on the ground of the reasonable dispositions contained in the instrument, the absence of proof of delusion at the time of the *factum*, and the rational manner in which the act was performed. Every incident specified in that case is supplied here for the purpose of supporting the will, and I am of opinion that the will should be admitted to probate.